IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 3:19-cr-00014 |
| | ) | JUDGE RICHARDSON |
| | ) | |
| CHRISTOPHER P. NUNLEY, JR. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant's "Motion to Dismiss Count III of the Indictment" (Doc. No. 112, "Motion"). Via the Motion, Defendant asks the Court to dismiss Count III of the pending Second Superseding Indictment, which alleges that he knowingly discharged a firearm in violation of 18 U.S.C. § 924(c) during a "crime of violence," namely, the alleged instance of attempted Hobbs Act robbery for which he is charged in Count II. Defendant argues that Count III should be dismissed because an attempted robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, does not qualify as a "crime of violence" in the aftermath of *United States v. Davis*, 139 S. Ct. 2319 (2019). Operating under a relatively tight time frame,[1] especially given that trial is nearly at hand and there is much else for it to be doing, the Government has filed a fulsome response.

In pertinent part, the Hobbs Act provides: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or

---

[1] The Court notes that ideally the Motion would have been filed much earlier. The § 924(c) charge at issue has been pending in this case ever since being included in the original indictment filed more than two years ago, and counsel's deadline for filing pretrial motions expired October 14, 2019. (Doc. No. 62). Any relief on the Motion poses a major risk of upsetting the proverbial apple-cart, in terms of (at the very least) logistics, for all involved. But the Government has chosen not to complain about the lateness of the Motion, but rather to meet the Motion head on, with a thorough brief on the merits that in no way appears to suffer from insufficient preparation time. For this reason, and the fact that the Court would feel constrained to address any colorable motion arguing that a count does not actually state a cognizable federal criminal offense, the Court will address the Motion rather than deny it based on prejudicial untimeliness.

extortion or attempts or conspires so to do . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). "Hobbs Act robbery" is the shorthand term used for "obstruct[ing], delay[ing], or affect[ing] commerce or the movement of any article or commodity in commerce, by robbery[.]" And whoever "attempts . . . so to do" is guilty of what is known for short as "attempted Hobbs Act robbery." Notably, robbery is defined as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C. § 1951(b)(1).

For purposes of a charge of using a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(A),[2] a "crime of violence" is defined in relevant part to mean a crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). Courts often refer to this definition as the "force clause" or "elements clause." "The force [or elements] clause of § 924(c)(3)(A) is distinct from what courts refer to as the 'residual clause' of § 924(c)(3)(B)—a clause which provides an alternative definition of a crime of violence to include any crime that 'by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *United States v. Halliday*, No. 3:17-CR-00267 (JAM), 2021 WL 26095, at *1 (D. Conn. Jan. 4, 2021) (quoting § 924(c)(3)(B)). "An attempted Hobbs Act robbery is probably risky

---

[2] The term "crime of violence" is used in many contexts, both legal and non-legal, for many different purposes. Hereinafter, the court uses the term "crime of violence" to refer specifically and exclusively to the term as defined in, and for purposes of, § 924(c)(1)(A) in particular, except insofar as the term is used herein to refer to the definition of "crime of violence" for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e), which has a clause identical to § 924(c)(1)(A)'s elements clause—thus making caselaw interpreting "crime of violence" for purposes of the ACCA relevant to the interpretation of "crime of violence" for § 924(c)'s (identical) elements clause.

enough to satisfy the residual clause." *Id*. However, in *Davis*, the Supreme Court invalidated the residual clause of § 924(c)(3)(B) on due process vagueness grounds. 139 S. Ct. at 2336. Thus, courts must now decide if attempted Hobbs Act robbery satisfies the elements clause under § 924(c)(3)(A).

The Sixth Circuit has not yet addressed the question of whether attempted Hobbs Act robbery is a crime of violence post-*Davis*. *See United State v. Clancy*, 979 F.3d 1135, 1140 (6th Cir. 2020); *see also United States v. Sherrill*, 972 F.3d 752, 768 (6th Cir. 2020) ("We have yet to address whether attempt to commit Hobbs Act robbery qualifies as a crime of violence under 18 U.S.C. § 924(c)'s elements clause, and we decline to do so here."). And other courts have reached opposite conclusions on the issue.

Four circuits have held that attempted Hobbs Act robbery is a crime of violence under the elements clause for purposes of 18 U.S.C. § 924(c). *See United States v. Walker*, -- F.3d --, 2021 WL 833994, at *10 (3d Cir. Mar. 5, 2021); *United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020); *United States v. Ingram*, 947 F.3d 1021, 1026 (7th Cir. 2020); *United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018). Conversely, one circuit has held that attempted Hobbs Act robbery is not categorically a crime of violence for purposes of § 914(c). *See United States v. Taylor*, 979 F.3d 203, 208 (4th Cir. 2020). And like circuit courts, district courts are split, and perhaps more evenly than are the circuit courts (although the undersigned cannot claim to have done a comparative tally to know the breakdown). Indeed, district judges within this district have come down on opposite sides of the issue. *See Starks v. United States*, ---F. Supp. 3d---, 2021 WL 351995, at *10 (M.D. Tenn. Feb. 2, 2021) (Crenshaw, J.) (holding that attempted Hobbs Act robbery *is not* a crime of violence under the elements clause); *Wallace v. United States*, 458 F.

Supp. 3d 830, 837 (M.D. Tenn. 2020) (Trauger, J.) (holding that attempted Hobbs Act robbery *is* a crime of violence under § 924(c)'s elements clause).

Because the trial date is quickly approaching, the Court for the most part will not spend time reiterating the respective rationales of these courts' split decisions. Instead the Court will focus on the explaining the answer to the question as it sees it. "[P]erhaps one day the Supreme Court [or the Sixth Circuit] will decide who is right, or Congress will clarify this vexing statutory scheme." *Halliday*, 2021 WL 26095, at *1. But in the absence of controlling authority, this Court must determine the answer for itself.

After initially noting that it adopts and incorporates Chief Judge Crenshaw's persuasive reasoning in *Starks* to supplement whatever else is said herein, the Court will get down to brass tacks on this issue. The Sixth Circuit's view is clear regarding the elements of the crime of attempting to commit a particular federal crime.[3] Here is what its pattern jury instruction provides, with "Count III" and "attempted Hobbs Act robbery" (and in one place "commit the crime of attempted Hobbs Act robbery") inserted into the blanks left in the pattern instruction in light of the circumstances surrounding the Motion:

**ATTEMPT − BASIC ELEMENTS**

(1) Count III of the indictment accuses the defendant of attempting to commit the crime of attempted Hobbs Act robbery in violation of federal law. For you to find the defendant guilty of this crime, you must be convinced that the government has proved both of the following elements beyond a reasonable doubt:

(A) First, that the defendant intended to commit the crime of attempted Hobbs Act robbery.

---

[3] Unlike the law of some states, federal law does not prescribe a general crime of "attempt," *i.e.*, does not generally make it a crime to attempt to commit a federal offense; it is a federal crime to attempt to commit a federal offense only to the extent that a particular federal statute says that it is crime to attempt to commit a specified federal offense. The Hobbs Act is one of these relatively rare federal statutes; it states that Hobbs Act robbery, *and* attempting to commit Hobbs Act robbery, are federal crimes.

> (B) And second, that the defendant did some overt act that was a substantial step towards committing the crime of <u>attempted Hobbs Act robbery</u>.
>
> (C) Merely preparing to commit a crime is not a substantial step. The defendant's conduct must go beyond mere preparation, and must strongly confirm that he intended to <u>commit the crime of attempted Hobbs Act robbery</u>. But the government does not have to prove that the defendant did everything except the last act necessary to complete the crime. A substantial step beyond mere preparation is enough.
>
> (2) If you are convinced that the government has proved both of these elements, say so by returning a guilty verdict on this charge. If you have a reasonable doubt about either one of these elements, then you must find the defendant not guilty.

Sixth Circuit Pattern Jury Instruction 5.01. So, at least in this circuit, there are two elements, and only two elements, of attempted Hobbs Act robbery: intent to commit attempted Hobbs Act robbery; and a substantial step towards committing Hobbs Act robbery. Under the elements clause, however, a crime is a "crime of violence" only if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). Attempted Hobbs Act robbery is simply not such a crime. It can be committed without using physical force, attempting to use physical force, or threatening to use physical force (against the person or property of another). In particular, one can have the intent to commit attempted Hobbs Act robbery, and commit a substantial step towards committing Hobbs Act robbery without using, attempting to use, or threatening to use physical force. As noted in the dissent in *Dominguez*, which the undersigned finds more persuasive than the majority opinion, "[a]ttempted Hobbs Act robbery is not a crime of violence because a substantial step toward completing a Hobbs Act robbery need not involve the use, attempted use, or threatened use of physical force." *Dominguez*, 954 F.3d at 1263 (Nguyen, J. dissenting).[4]

---

[4] Chief Judge Crenshaw's opinion demonstrates this thoroughly:

> Consider the following scenarios:

> 1. A man stops an armored vehicle and shoots and injures the driver. But the driver escapes with the money.
> 2. A man intercepts an armored vehicle by standing in front of it with his gun pointed at the driver. He pulls the trigger, intending to strike and injure the driver, but the gun jams. The driver escapes with the money.
> 3. A man plans a robbery, buys the necessary gear, and drives toward the target, but returns home after seeing police in the vicinity.
>
> Each scenario describes an attempted Hobbs Act robbery. In (1), the man uses physical force. In (2), the man attempts to use physical force. In (3), the man does not use, attempt to use, or threaten to use physical force, even though he intended to commit a robbery and took a substantial step toward committing it.
>
> This last scenario—a possible "least serious form" of attempted Hobbs Act robbery—shows that an attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause.

*Dominguez*, 954 F.3d at 1263-64 (Nguyen, J. dissenting). Real world examples also show that attempted robberies do not categorically include the attempted, threatened, or actual use of violence:

> In *United States v. Stallworth*, 543 F.2d 1038, 1041 (2d Cir. 1976), the Second Circuit upheld an attempted robbery conviction where the defendants "reconnoitered the bank, discussed (on tape) their plan of attack, armed themselves and stole ski masks and surgical gloves," had a getaway car ready, and "moved ominously toward the bank." None of these actions was violent. Even less was sufficient to convict the defendants of attempted bank robbery in *United States v. Jackson*, 560 F.2d 112 (2d Cir. 1977). In that case, the Court upheld the conviction where the defendants "reconnoitered the place contemplated for the commission of the crime and possessed the paraphernalia to be employed in the commission of the crime." *Id.* at 120. There, too, violence – threatened, attempted, or otherwise – was absent. In *United States v Muratovic*, 719 F.3d 809, 816 (7th Cir. 2013), the Seventh Circuit affirmed an attempted robbery conviction where "the co-conspirators had assembled a team, finalized the robbery plan, conducted surveillance on the truck, procured two handguns and all other supplies called for in the plan," filled up gas cans for the drive, and arrived on location of the would-be crime. No violence.

*United States v. Culbert*, 453 F. Supp. 3d 595, 598–99 (E.D.N.Y. 2020); *see also United States v. Wrobel*, 841 F.3d 450, 453-55 (7th Cir. 2016) (upholding attempted Hobbs Act robbery conviction where evidence showed defendants planned robbery of diamond merchant, secured van, traveled across state lines, but were arrested before robbery and found in possession of gloves, a pry bar, and hoods to disguise their looks); *United States v. Gonzalez*, 441 F. App'x 31, 36 (2d Cir. 2011) (finding sufficient evidence of attempted Hobbs Act robbery where defendants "reconnoiter[ed] at the scene of the contemplated crime while in possession of paraphernalia," including a firearm, a starter pistol, and ski masks).

*Starks*, 2021 WL 351995, at *9-10.

The undersigned fails to see how the analysis of Chief Judge Crenshaw (and the cases he cites) is incorrect. To the extent that the Government disagrees with this analysis, and argues for a *narrower* scope of "substantial step" sufficient to satisfy the second element of attempted Hobbs Act robbery, the Government should be careful what it wishes for; the next time it charges a defendant with attempted Hobbs Act robbery without charging a corresponding violation of § 924(c) based on the alleged attempted Hobbs Act robbery, this argument could be turned against it by

Arguing otherwise, the Government does something revealing. It abandons (in this particular context, *i.e.*, explaining how the aforementioned two elements of attempted Hobbs Act robbery actually and necessarily entail "the use, attempted use, or threatened use of physical force against the person or property of another") reliance on the notion that attempted Hobbs Act robbery has as an element the "attempted use" of physical force, and instead relies on the notion that attempted Hobbs Act robbery has as an element the "threatened use" of physical force. This is telling because in *other* contexts (*i.e.*, the ones that in the view of the undersigned are less relevant because they simply are not sufficiently focused on the *elements* of attempted Hobbs Act robbery), the argument that attempted Hobbs Act robbery is "a crime of violence" is, consistently and not surprisingly, focused on the "attempted use" aspect of the definition of a crime of violence. There is no question that the major (and seemingly virtually exclusive) reason why, in other contexts, courts find attempted Hobbs Act robbery to be a crime of violence is that they believe that attempted Hobbs Act robbery has as an element the "attempted use" of physical force.

The Government's inability to rely on "attempted use" in this particular context—the one that matters most—should serve as a warning sign that the Government is in serious trouble here. It simply cannot explain how "attempted use" of force is an element of attempted Hobbs Act robbery as defined by the Sixth Circuit. So it resorts to arguing in essence that if the defendant does *anything* significant enough to constitute a substantial step towards the commission of attempted Hobbs Act robbery, then the defendant necessarily has "threatened" the use of physical

---

the defendant seeking to avoid conviction for attempted Hobbs Act robbery (without having to worry about whether it is a crime of violence for purposes of § 924(c)).

    This observation is consistent with the overarching irony on this Motion: the Government, in seeking a broad definition of "crime of violence" in order to ensure the applicability of § 924(c) to attempted Hobbs Act robbery, is actually suggesting a *narrow* definition of attempted Hobbs Act robbery, which of course generally (or at least in particular other cases) is precisely what the Government would want to avoid.

force. (Doc. No. 126 at 8). The Court cannot agree. As indicated above, if a defendant intends to commit Hobbs Act robbery and drives (armed) to the location where the robbery is to occur but then goes home without further proceeding towards completion of the crime, then he or she has the requisite intent and has committed the requisite substantial step for attempted Hobbs Act robbery. Is such a defendant fairly considered to have "threatened" use of force? Perhaps, in one sense—in the sense that he has created circumstances whereby it looked like Hobbs Act robbery could occur. This is the sense that pertains if someone speaks of the Braves threatening to score, having loaded the bases against the Phillies; they have created conditions that portend scoring, but that have not made a threat to, or "threatened," the Phillies themselves. This is not the kind of "threaten[ing]" implicated by the Hobbs Act, however; the Court is unaware of principles or case law that suggest that someone employs "threatened force" against someone within the meaning of the definition of Hobbs Act robbery (*i.e.*, the taking of property by various means, including "threatened force") unless they direct a threat at the victim, rather than merely creating conditions that make the use or threat of use of force toward the victim relatively likely.

In determining whether a predicate "attempt crime" is a "crime of violence," courts have said certain things that, if accepted by the undersigned, would put the Government on firm footing indeed. One example is the statement that "'an attempt to commit a crime should be treated as an attempt to commit every element of the crime'" *United States v. Abdulkader*, No. 1:16-cr-019, 2019 WL 6351257, at **4-5 (S.D. Ohio Nov. 27, 2019) (quoting *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2019)). But this statement fails to square with the Sixth Circuit's elements for an attempt crime, which simply do not require proof of an attempt to commit every element of the crime.[5] Instead, the elements are as stated above: *intent* to commit the crime, and the taking of a

---

[5] The proposition from *Abdulkader,* adopted from the Seventh Circuit's opinion in *Hill*, has the additional problem that, as phrased, it does not make sense in many cases. For many crimes, one or more elements constitute not *acts* that

*substantial step* towards the commission of the crime. Another example is the statement that "since Hobbs Act robbery is a crime of violence, it follows that the attempt to commit Hobbs Act robbery is a crime of violence." *Dominguez*, 954 F.3d at 1255. The undersigned respectfully suggests that this actually does not follow, either inherently or for the specific reasons cases typically provide for concluding that this does follow.

The Government makes numerous other arguments that are far from frivolous, in that some courts apparently have embraced them in finding that attempted Hobbs Act robbery is a "crime of violence." As time grows short, the Court simply lacks the time to address them all specifically in any detail. But it can say this: in the Court's view, these arguments may be based on underlying premises that are sound as far as they go, but are ultimately not material to the questions that actually matter here:[6] what are the elements of attempted Hobbs Act robbery, and does one of them involve "the use, attempted use, or threatened use of physical force against the person or property of another"? The answers to these questions are not illuminated by the Government's discussion of, for example, the lack of a meaningful distinction between the use of force and the threatened use of force, (Doc. No. 126 at 8), or the fact that robbery (as opposed to *attempted* robbery) is the quintessential crime of violence (*id*. at 4). Nor are these answers illuminated by the Government's discussion about the contours of common law robbery. (*Id*. at 3-4). And to the extent that the Government, or courts reflecting its position, rely on particular notions of what a criminal

---

can be *committed* by the defendant, but rather *circumstances* that the defendant cannot "commit" and need not even be aware of. For example, a defendant's possession of a firearm "in and affecting commerce" is an element of a violation of 18 U.S.C. § 922(g)(1), but such element does not require that the defendant intended or even knew that such possession was "in and affecting commerce." And just as a defendant cannot "commit such elements," a defendant cannot *attempt* to commit such elements.

[6] This Court here echoes what Judge Nguyen said about the analysis of the majority in *Dominguez*, *i.e.*, that "such analysis consists of several correct-but-irrelevant statements intermixed with illogical conclusions." 954 F.3d at 1264 (Nguyen, J., dissenting).

"attempt" is, that likewise is unpersuasive; the issue here is *not* about the *nuances of the nature or scope* of the concept of "attempt" reflected in the definition of "crime of violence" generally; instead, the issue is whether, given the *placement* of the word "attempted" in the definition, attempted Hobbs Act robbery is a crime of violence. And as for its placement, the word appears only once, before the word "use," indicating that a crime is not a "crime of violence" by virtue of the word attempt unless it has as an element an "attempted use" of violence—and that a crime is not a "crime of violence" by virtue of the word "attempted" merely because the crime is defined as the attempt to commit a crime that is itself a "crime of violence" (in that it has as an element the use, attempted use, or threatened use of physical force).

This leads to the next point. If Congress had wanted to say that an attempt to commit a "crime of violence" is itself a crime of violence, it could have done so. But it did not. Instead, it used the word "attempted" in a particular way, in a particular place in the statutory definition of "crime of violence." And the specific placement of the word "attempted" simply does not support the notion that Congress intended that a crime defined as an attempt to commit a "crime of violence" is necessarily itself a "crime of violence."

According to the Government, statutory text and background "here indicate that Congress did not draft § 924(c)(3)(A) to exempt attempted federal robbery offenses, which are at the core of what Congress meant to include as 'violent' offenses." (Doc. No. 126 at 6). Of course, here we are not actually addressing what constitutes a "'violent' offense" (as opposed to a "crime of violence"). But the Government's statement here has two bigger problems. The first is that the issue is not whether attempted Hobbs Act robbery is somehow "exempted" from the definition of "crime of violence," but rather whether it is *included* in the first place. Second, if Congress did in fact intend to include attempted Hobbs Act robbery, it certainly had a funny way of (not) showing

it, by leaving us with a definition that fails to reflect such intent, as discussed above, when the reflection of such intent simply would not have been difficult.

The Court also does not see why Congress could not properly be deemed to have written the statute as it did specifically to exclude "attempt" crimes that do not ultimately require attempted use of physical force even if they require an intent to commit a crime that involved use of force and the taking of a substantial step towards that crime. Taking a categorical approach as it did, Congress could have demarked (and did demark, as far as the text itself indicates) the category of those crimes serious enough to merit § 924(c)'s very serious penalties by drawing a distinction between (a) persons who necessarily attempted the use of physical force, and (b) those who did not necessarily *actually* take their actions so far (even if they at one point intended to take their actions so far and took a substantial step in that direction).

Despite its misgivings about deeming attempted Hobbs Act robbery a "crime of violence," the Court would do so if it perceived that Sixth Circuit precedent strongly suggested such a result (even if such case law did not necessarily *require* such a result). But the Court is left with no such perception. Of course, the Sixth Circuit has not ruled on this precise issue, so the Government naturally cannot point to any Sixth Circuit precedent directly requiring this result. But the Government did cite Sixth Circuit cases seemingly suggesting a proposition that, if it actually were dictated by binding precedent, might have persuaded the Court that it must reach the particular result urged by the Government in this case. Specifically, the Government cites two Sixth Circuit cases that "found that other attempt crimes—including other attempted robbery crimes—satisfy the elements clause."[7] (Doc. No. 126 at 2-3 (citing *Chaney v. Untied States*, 917 F.3d 895, 904

---

[7] Each of these two cases addressed the elements clause for purposes of determining whether state attempted robbery constituted a "violent felony" for purposes of the Armed Career Criminal Act (18 U.S.C. § 924(e)), not whether state attempted robbery constituted a "crime of violence" for purposes of § 924(c). But the Armed Career Criminal Act has a clause identical to § 924(c)(1)(A)'s elements clause—thus making these and other cases interpreting the elements

(6th Cir. 2019), and *United States v. Mansur*, 375 F. App'x 458, 464 (6th Cir. 2010), *overruled on other grounds by United States v. Yates*, 866 F.3d 723 (6th Cir. 2017))). The Government's description of these cases is accurate as far as it goes, and the description indicates that perhaps the Sixth Circuit has strongly suggested endorsement of the proposition that attempted robbery crimes generally fall within the elements clause just as robbery does (presumably because of the element clause's reference to "attempted" use of physical force).

Unfortunately for the Government, the older of these cases is non-precedential, and unpersuasive on this point in any event, while the newer is easily distinguishable. *Mansur* is an unpublished opinion and thus non-precedential; moreover, its analysis of why attempted robbery under Ohio law is a "crime of violence" is quite brief and provides little to persuade the reader that crimes of attempted robbery fall within the elements clause as a general matter.

*Chaney* is certainly precedential, but its relevant holding is based on a Michigan crime — again, attempted (unarmed) robbery—that is clearly distinguishable from attempted Hobbs Act robbery in a vital way. As correctly asserted by the Government, *Chaney* did hold that Michigan attempted robbery fits within the elements clause. And the Court grants that in rejecting the defendant's argument to the contrary, the Sixth Circuit observed that the "elements clause expressly includes the 'attempted use' of physical force." *Chaney*, 917 F.3d at 904. But the Court does not dispute this [undisputable] observation or the Sixth Circuit's characterization of it as a "straightforward reading," which it clearly is since it is a direct quote from the elements clause. What matters, though, is that the Sixth Circuit—despite indicating a receptiveness to the notion that attempted unarmed robbery must fit within the elements clause merely because unarmed

---

clause for purposes of the Armed Career Criminal Act relevant to the interpretation of the (identical) elements clause for purposes of § 924(c).

robbery does—did not so hold, let alone explain such a holding or say anything about this notion beyond the sparse words recounted above.

Instead, the Sixth Circuit's holding was grounded in the fact that under Michigan law, "the same degree of 'force and violence, assault, or putting in fear'"—any of which, the Sixth Circuit held was sufficient to make unarmed robbery fit within the elements clause—was required for attempted unarmed robbery as for unarmed robbery. *Id.* (citing *United States v. Tirrell*, 120 F.3d 670, 680-81 (7th Cir. 1997)).[8] Anything less would be insufficient to satisfy Michigan's version of the federal "substantial step" element, *i.e.*, the requirement of an "overt act" meeting certain specifications. But attempted Hobbs Act robbery is different. As discussed above, it can be committed via a substantial step that falls short of the use or threat of violence necessary to commit Hobbs Act robbery. So although *Chaney* indicates that Michigan's attempted unarmed robbery is necessarily a crime of violence, it does not indicate that attempt crimes generally, or attempted Hobbs Act robbery specifically, constitute a "crime of violence."

As for the Government's assessment of the impact of courts declaring attempted Hobbs Act robbery to not be a crime of violence, (Doc. No. 126 at 9-10), the Court does not disagree. But this Court's job is not to make *policy* assessments, but rather to apply existing *law* (including by interpreting federal criminal statutes) to the best of its ability. Under the Court's interpretation of the applicable statutory definition of crime of violence as applied to the elements of an attempt crime in the Sixth Circuit, Congress simply has not indicated in the statute that attempted Hobbs Act robbery is a crime of violence. And if the policy result truly is so disastrous (in the view of the political branches of government that do policy), Congress can fix the result by amending the definition of "crime of violence" to make clear its intention that it apply more broadly to "attempt"

---

[8] "That is, the only difference between unarmed robbery and attempted unarmed robbery is whether the perpetrator is successful in taking the property[.]" *Chaney*, 917 F.3d at 904.

crimes than the current definition reasonably suggest. And whatever one may think of Congress and its responsiveness to extent conditions in our courts and society, Congress does have a history of responding to court opinions it does not like by passing new criminal legislation to make its policy clear—as anyone familiar with 18 U.S.C. § 1346 could tell you.

Finally, the fact that "crime of violence" at the very least, cannot be said to *clearly* apply to attempted Hobbs Act robbery raises a final concern, namely, the rule of lenity. As explained by the Sixth Circuit:

> The language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear. However, this court also looks to the language and design of the statute as a whole in interpreting the plain meaning of statutory language. Finally, we may look to the legislative history of a statute if the statutory language is unclear. If the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history, we apply the rule of lenity in favor of criminal defendants.

*United States v. Miller*, 734 F.3d 530, 540 (6th Cir. 2013) (quoting *United States v. Choice,* 201 F.3d 837, 840 (6th Cir. 2000) (internal quotation marks and citations omitted)). The rule applies here because "[a]t the very least, it may be said that the issue is subject to some doubt. Under these circumstances, we adhere to the familiar rule that 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.'" *Adamo Wrecking Co. v. United States,* 434 U.S. 275, 284–85 (1978) (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971)).[9]

To be sure, the fact that courts are sharply divided on an issue (as they are on whether attempted Hobbs Act robbery is a crime of violence) does not itself indicate that the applicability of a statute is ambiguous, but it certainly can be one strong indication of such ambiguity. In any

---

[9] Lest there be any doubt, the Court notes that § 924(c), a unique criminal statute, is subject to the rule of lenity where its application to the defendant's particular conduct is appropriate, just as other criminal statutes are. *See Muscarello v. United States*, 524 U.S. 125, 138 (1998) (considering before rejecting on the merits the application of rule of lenity to §924(c)'s term "carries a firearm").

event, having found that "crime of violence" unambiguously does not apply to attempted Hobbs Act robbery for the reasons discussed above, the Court would add that only in a best case scenario for the Government is there ambiguity as to the applicability of the statute; that is to say, in the Court's view the Government would be very hard-pressed to show an ambiguity where the Court has not seen one.[10] And even if the Government could show an ambiguity, the ambiguity goes against the Government, such that the rule of lenity is applied.

The Court understands that "[t]he simple existence of some statutory ambiguity [] is not sufficient to warrant application of that rule, for most statutes are ambiguous to some degree." *Muscarello*, 524 U.S. at 138 (citation omitted). Court realizes that a defendant cannot seek refuge in the rule of lenity merely by positing some semi-colorable interpretation of a criminal statute whereby the statute would be inapplicable to his conduct, and the Court is ever on guard against the notion that a particular meaning cannot be derived from a statute to the exclusion of other meanings.[11] The Court also realizes that mere hair-splitting or creative word-smithing will not justify application of the rule of lenity. But that is not what the Court is doing here; the Court simply is not conjuring up an ambiguity in favor of Defendant. Instead, in the Court's view, if the statute here were deemed ambiguous as to its applicability to attempted Hobbs Act robbery, that would be the result of construction that is favorable to the *Government*, which in the Court's view

---

[10] That is to say, having analyzed the plain meaning and structure of the statute, and not being presented with any legislative history that truly addresses the *specific* issue here, the Court concludes that attempted Hobbs Act robbery unambiguously falls outside the scope of "crime of violence." But the Court assumes *arguendo* that, *especially* if aided by a legislative-history argument related the specific issue involved here, that the Government could conceivably move the needle from unambiguous to ambiguous.

[11] The Court is also aware that defendants frequently get no traction when invoking the rule of lenity. But sometimes a defendant does prevail on the rule of lenity, convincing the court that a statute is ambiguous with respect to whether it is applicable to the defendant's particular alleged conduct. *See Miller*, 734 F.3d at 540 (reversing defendant's conviction for illegally "us[ing" a means of identification in violation of 18 U.S.C. § 1028A, on the grounds that "'uses' is ambiguous because the parties advance equally reasonable interpretations of that term" as applied to the defendant's specific alleged conduct).

has been unable to explain why the statutory definition of "crime of violence" is not *unambiguously inapplicable* to attempted Hobbs Act robbery given the elements of attempted Hobbs Act robbery. And even in this best-case scenario for the Government, it could not prevail, because the rule of lenity counsels in favor of the Court declining to construe the statutory definition as applicable to Defendant's conduct.

The Government writes that "[w]hen faced with two possible interpretations of a statutory provision, courts do not adopt the reading that yields a 'comical misfit' with the statute as a whole." (Doc No. 126 at 6 (quoting *Johnson v. United States*, 559 U.S. 133, 145 (2010))). If the Government here is suggesting that the reading adopted by the Court is "comical,"[12] that suggestion itself would be comical—at least in the view of the undersigned and, he suspects, the many other judges who have adopted the same reading.

## CONCLUSION

For all of these reasons, the Motion is GRANTED, and Count III is hereby dismissed.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] If the Government is making this suggestion, it is a rare instance in its brief where it goes too far. For the most part, the problem with the Government's argument is not that it is without some basis, but rather that it is ultimately unpersuasive when one takes a closer look at such arguments and also focuses on the overarching and dispositive question(s): what are the elements of attempted Hobbs Act robbery/what is required for a conviction for attempted Hobbs Act robbery?